IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHARLES JOHNSEN, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) No. 14-cv-09585 |
| | ) |
| ROBERT C. ACRI and KENILWORTH ASSET MANAGEMENT, LLC | ) |
| | ) |
| | ) **JURY DEMANDED** |
| Defendants. | ) |

## COMPLAINT

The Plaintiff, Charles Johnsen, through his attorney, hereby complaints against the Defendants Robert C. Acri and Kenilworth Asset Management, LLC as follows:

### Nature of the Action

1. The Plaintiff, Charles Johnsen, brings this action against his investment advisors Robert C. Acri and Kenilworth Asset Management, LLC, an investment advisor firm. The claims arise from the fraudulent sale of securities by the Defendants to the Plaintiff in violation of federal and state securities laws that directly resulted in damages to the Plaintiff.

### Jurisdiction

2. This Court has subject matter jurisdiction over Johnsen's federal securities law claim pursuant to Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and SEC Rule 10b-5, 17 C.F.R. §240.10b-5, promulgated thereunder, and 28 U.S.C. § 1331.

3. This Court has supplemental subject-matter jurisdiction over Johnsen's state law claim pursuant to 28 U.S.C. § 1367 because the Illinois securities law claim is so related to the federal claim that it forms a part of the same case or controversy under Article III of the United States Constitution.

## The Parties

4. The Plaintiff, Charles Johnsen ("Johnsen") is an individual residing in Illinois.

5. The Defendant, Kenilworth Asset Management, LLC ("Kenilworth") is an Illinois limited liability company located in Kenilworth, Illinois. Kenilworth is an investment advisor firm registered with the Securities Exchange Commission.

6. The Defendant, Robert C. Acri ("Acri") is an individual residing in Winnetka, Illinois. On information and belief, Acri was the founder of Kenilworth and served as its managing member from on or about 2002 to July 2012. Acri is also a licensed attorney in the State of Illinois since 1983.

7. As the managing member of Kenilworth, Acri controlled Kenilworth's bank accounts, hired its employees, formulated and oversaw its practices and policies, and made significant decisions concerning the investments Kenilworth offered to its clients, including the investment which is the subject of this action.

8. Johnsen was an investor client of Kenilworth and relied on the investment advice he received from members and employees of Kenilworth, including Acri, in making personal investment decisions.

9. By virtue of the fraudulent scheme alleged herein, Acri was found to have violated Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5, 17 C.F.R. §240.10b-5, promulgated thereunder and was barred by the Securities Exchange Commission from associating with any broker, dealer, and investment advisor pursuant to a Cease and Desist Order dated June 11, 2014, a copy of which is attached and incorporated herein as Exhibit A.

## The Defendant's Investment Advise

10. Johnsen primarily relied on William Hayes, a member of Kenilworth to provide him with financial advise and to manage his 401(k) retirement portfolio.

11. In the early 2011, Johnsen expressed to Hayes his desire to improve the performance of his 401(k) retirement investments while continuing to minimized the risk of loss since the funds were necessary for Johnsen's retirement.

12. On or about April 2011, Hayes arranged for Johnsen to meet with Acri at Kenilworth's offices. At the time of the meeting, Acri was the controlling member of Kenilworth and its manager.

13. At the meeting, Acri informed Johnsen about Prairie Common Holdings, LLC, ("Prairie") an Illinois limited liability company formed to hold a real estate investment located near Hammond, Indiana.

14. Acri told Johnsen that Prairie was developing a retail parcel in Indiana and was selling promissory notes secured by the real estate to raise funds for the development of the parcel.

15. Acri represented that the secured Promissory Notes would bear interest at the annual rate of 15% and had maturity dates of approximately six to eight months.

16. Acri further told Johnsen that given the secured nature of the promissory notes and the promising success of the retail development of adjacent parcels, including the redevelopment of the Woodmar Mall, the investment posed little risk and would be an appropriate investment for Johnsen's 401(k) retirement plan.

17. Based on Acri's advise and recommendations, Johnsen consented to Kenilworth's

transfer of $40,000 from Johnsen's 401(k) retirement account at Kenilworth to a 401(k) account used to purchase the promissory notes in Prairie.

18. Based on this transfer by the Defendants, the Plaintiff became the holder of a $40,000 Secured Promissory Note executed by Prairie Common Holdings bearing an interest rate of 15% per annum. (Hereinafter referred to as the "Prairie Promissory Note") Johnsen has been unable to locate a copy of the Prairie Promissory Note representing his investment in Prairie but believes that Kenilworth has the original or a copy of said Note in its possession, custody and/or control.

19. On information and belief, from approximately April 2011 through September, 2011, Acri and Kenilworth sold a total of $240,000 in the Prairie Promissory Notes to six Kenilworth clients, including the $40,000 invested by Johnsen.

### Defendants' Fraudulent Sale of the Prairie Promissory Notes

20. After making unsuccessful requests to Kenilworth about the status of his investment in the Prairie Promissory Notes, Johnsen received information from the Securities and Exchange Commission on or about June, 2014 that Acri knowingly made false and misleading statements in connection with the offer and sale of the Prairie Promissory Notes and knowingly failed to disclose material facts in willful violation of Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5 thereunder and Sections 206 (1) and 206(2) of the Investment Advisors Act of 1940. As a result of Acri's fraudulent conduct, the Commission had entered the Cease-and-Desist Order on June 11, 2014 against Acri. [Exhibit A]

21. Specifically, Acri, through Kenilworth, intentionally misrepresented that the Prairie Promissory Notes were a suitable investment for Plaintiff's 401(k) retirement plan and

knowingly failed to disclose to Johnsen the following material facts in connection with the offer and sale of the Prairie Promissory Notes:

a. That prior to the creation of Prairie Common Holdings, other Kenilworth advisory clients had invested $500,000 in 2005 in the form of a loan to Prairie's developer, Praedium Development Corporation ("Praedium") for redeveloping the Woodmar Mall on the Indiana retail parcel;

b. That the Praedium's development project was in a severely distressed financial condition and was delinquent in the payment of its mortgage, property taxes and contractor invoices at the time Prairie was formed in 2011;

c. That the Praedium $500,000 loan from Keniulworth's clients was delinquent and Kenilworth's advisory clients had not been paid anything on the loan at the time Prairie was formed in 2011;

d. That a plan was created to split off smaller parcels of land from the Woodmar Mall redevelopment project, including the Prairie parcel, in order to give Woodmar equity and falsely demonstrate that progress was being paid in the Mall redevelopment;

e. That the primary purpose of forming Prairie and selling the Prairie Promissory Notes was to provide equity to the financially distressed Praedium development and give Kenilworth's other clients an opportunity to recover on their earlier loan to Praedium;

f. That Arci and Kenilworth has a serious conflict of interest in selling the Prairie Promissory Notes to Plaintiff in order to recover the investments made by prior Kenilworth clients; and

g. That Kenilworth was to receive a 5% commission on the sale of the Prairie Promissory Notes.

22. Additionally, Plaintiff is informed by the SEC June 11, 2014 Cease and Desist Order that Acri misappropriated $41,250 of from the funds received on the sale of the Prairie Promissory Notes which he represented would be used to develop Prairie but instead used said funds for his own personal benefit.

23. The SEC June 11, 2014 Cease and Desist Order further informed the Plaintiff that

the Prairie Promissory Notes were never secured as represented because Acri never took any action to ensure that they were recorded.

24. The Prairie redevelopment project has failed and Plaintiff has lost the entire $40,0000 invested in the Prairie Promissory Notes.

## COUNT I

**(VIOLATIONS OF SECTION 10(b) OF THE EXCHANGE ACT [15 U.S.C. §§ 78J(b)] AND SEC RULE 10b-5 [17 C.F.R. § 240.10b-5] PROMULGATED THEREUNDER)**

1-24. Plaintiff incorporates paragraphs 1 through 24 above as paragraphs 1 through 24 of this Count I.

25. In connection with the offer and sale of the Prairie Promissory Notes, by use of the instrumentalities of interstate commerce and of the mails, Defendant Acri and Kenilworth, through its agent, Acri made the foregoing false and misleading statements about the Prairie Promissory Notes in violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5, Defendants Arci and Kenilworth.

26. Each of the misrepresentations and omissions of fact alleged above was material. Plaintiff considered, and any similarly situated reasonable person or entity would have considered, the facts as set forth above to be of material importance in deciding whether to purchase the Prairie Promissory Notes.

27. Plaintiff would not have agreed to purchase the Prairie Promissory Notes if he had known of the facts as set forth above.

28. Defendants knew or should have known that Plaintiff would rely on the false and misleading statements described above when he decided whether to invest in the Prairie

Promissory Notes

29. Plaintiff did in fact rely on these false and misleading statements in connection with investing in the Prairie Promissory Notes.

30. Defendants also had motive and opportunity to make these false and misleading statements, by receiving income from the sale of the Prairie Promissory Notes and to preserve its relationship with prior Kenilworth clients to obtain more investment funds.

31. Defendants had a duty to state and disclose all material facts necessary to make the statements made, in light of the circumstances in which they were made, not false and misleading statements. Defendants failed to do so. As a result, Plaintiff relied on these false and misleading statements and purchased the Prairie Promissory Notes as part of his retirement plan.

32. As a direct and proximate result of Defendants' misrepresentations and direct and indirect omissions of material fact, on which Plaintiff reasonably relied and for which reliance is presumed, Johnsen has been injured in an amount in excess of $40,000.00

WHEREFORE, Plaintiff Charles Johnsen requests that this Court enter judgment in his favor and against Defendants Robert Acri and Kenilworth Asset Management, LLC, both jointly and severally and to award him all relief available including, but not limited to:

    a. Awarding plaintiff damages in an amount in excess of $40,000;

    b. Awarding Plaintiff consequential damages, including lost interest;

    c. Awarding Plaintiff the costs, together with the reasonable attorneys' fees and expenses incurred by Plaintiff as a result of prosecuting this action; and

    d. Awarding Plaintiff such other and further relief as the Court deems just

and equitable.

## COUNT II
### (VIOLATION OF ILLINOIS SECURITIES LAW OF 1953)

1-32. Plaintiff incorporates paragraphs 1 through 32 of Count I as paragraphs 1 through 32 of this Count II.

33. Defendants' sale of the Prairie Promissory Notes to Plaintiff constituted the sale of "securities" for purposes of Section 2.1 of the Illinois Securities Law of 1953.

34. During the course of the sale of the Prairie Promissory Notes, Defendants Acri and Kenilworth, through its agent, Acri, made the statements of material fact as alleged above which were in fact untrue, and which Defendants knew were untrue.

35. These representations and omissions were made with the intent that Plaintiff rely on the statements in deciding to purchase the Prairie Promissory Notes.

36. Plaintiff did in fact reasonably rely upon the honesty and truthfulness of the foregoing statements and omissions in deciding to purchase the Prairie Promissory Notes.

37. The foregoing representations and omissions were materially false and misleading.

38. Under Section 12 of the Illinois Securities Law, it is a violation of the Illinois Securities Act:

    (F) to engage in any transaction, practice or course of business in connection with the sale or purchase of securities which works or tends to work a fraud or deceit upon the purchaser or seller thereof.

    (G) to obtain money or property through the sale of securities by means of any untrue statement of material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstance under which they were made, not misleading.

\*   \*   \*   \*

 (I) to employ any device, scheme or artifice to defraud in connection with the sale or purchase of any security, directly or indirectly.

39. Similarly, when acting as an investment adviser, investment adviser representative, or federal covered investment adviser, it is a violation of the Illinois Securities Act to directly or indirectly:

 (1) To employ any device, scheme or artifice to defraud any client or prospective client;

 (2) To engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client; or

 (3) To engage in any act, practice, or course of business which is fraudulent, deceptive or manipulative. The Secretary of State shall for the purposes of this paragraph (3), by rules and regulations, define and prescribe means reasonably designed to prevent such acts, practices, and courses of business as are fraudulent, deceptive, or manipulative.

40. Defendant Acri violated the Illinois Securities Act by engaging in the foregoing misconduct alleged herein in connection with the offer and sale of the Prairie Promissory Notes to Plaintiff.

41. Defendant Kenilworth is also responsible directly for these misrepresentations and omissions made by Acri, and the damages suffered by Plaintiff, pursuant to its knowledge of the activities of its Registered Representative, Acri, and by virtue of its failure to properly supervise Acri and maintain internal supervisory control of Acri, as required by NASD Rules related to the supervision of its employees and affiliated Registered Representatives.

42. On October 14, 2014, Johnsen, though his counsel served Acri and Kenilworth with a Notice of Rescission pursuant to Section 13 of the Illinois Securities Act, demanding that

Defendants return the consideration he paid for the Prairie Promissory Notes, together with interest. A copy of the Notice is attached hereto as Exhibit B. The Defendants have failed to comply with the Notice of Rescission.

43. Plaintiff has suffered rescission damages and costs and expense as a result of Defendants' actions.

44. Pursuant to Section 13 of the Securities Law, Plaintiff is entitled to rescind his purchase of the Prairie Promissory Notes, and he is entitled to other relief as provided thereunder.

WHEREFORE, Plaintiff Charles Johnsen requests that this Court enter judgment in his favor and against Defendants Robert Acri and Kenilworth Asset Management, LLC , both jointly and severally and to rescind the sale of the Prairie Promissory Notes, recover the amounts paid for said Notes, plus interest at the Note's rate of 15%, accruing from the date of purchase, and to award Plaintiff his attorneys' fees, expenses and costs incurred in connection with this action, and such other and further relief as deemed appropriate under the Illinois Securities Law.

### COUNT III
**(Common law fraud)**

1-44. Plaintiff incorporates paragraphs 1 through 44 of Count II as paragraphs 1 through 44 of this Count III.

45. The affirmative misrepresentations of material fact by Defendant Acri as described above as to the Prairie Promissory Notes, and his failure to disclose certain other material facts as identified above, constitute common law fraud under Illinois law.

46. Plaintiff relied to his detriment on the affirmative misrepresentations and omissions as outlined above, and would not have invested in the Prairie Promissory Notes if the

true facts were made known to him.

47. Plaintiff has been damaged by Acri's wrongful conduct as to the Prairie Promissory Notes in the form of lost principal, interest/return on investment, costs and fees.

48. Defendant Kenilworth is also responsible directly for these misrepresentations and omissions made by its agent Acri and the damages suffered by Plaintiff, pursuant to its knowledge of the activities of its Registered Representative, Acri, and by virtue of its failure to properly supervise Acri and maintain internal supervisory control of Acri, as required by NASD Rules related to the supervision of its employees and affiliated Registered Representatives.

49. In addition to actual and consequential damages suffered as a result of the Defendants' wrongful conduct, Plaintiff is also entitled to punitive damages as a result of Defendant intentional fraud and egregious conduct described above.

WHEREFORE, Plaintiff Charles Johnsen requests that this Court enter judgment in his favor and against Defendants Robert Acri and Kenilworth Asset Management, LLC, both jointly and severally, and to award him actual, consequential, and punitive damages in an amount exceeding $100,000.00 and such other relief the Court deems just and proper.

**PLAINTIFF DEMAND A JURY ON ALL CLAIMS**

CHUCK JOHNSEN

By: /s/ Marshall J. Burt<br>One of his attorneys

Marshall J. Burt, Esq.
The Burt Law Group, Ltd.
77 West Washington Street
Suite 1300
Chicago, IL 60602
(312) 419-1999
Marshall@mjburtlaw.com